Case 4:21-cr-00356   Document 23   Filed on 02/25/22 in TXSD   Page 1 of 7

United States District Court
Southern District of Texas
**ENTERED**
February 25, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § § § § | |
| v. § § | CRIMINAL ACTION H-21-356 |
| JOHNIETHON GRIGSBY § § § | |
| *Defendant*. § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is defendant Johniethon Grigsby's ("Grigsby") motion to suppress evidence. Dkt. 19. After reviewing the motion, response, and the applicable law, the court is of the opinion that the motion should be DENIED.

**I. BACKGROUND**

Due to its brevity, the court quotes Grigsby's motion in its entirety:

On June 16, 2021, Mr. Grigsby was detained and searched by Houston Police Officers without a warrant and without a reasonable suspicion or probable cause to believe a crime has been committed. This search was unreasonable. As such, the search was illegal, and evidence was collected in violation of the 4th Amendment of the United States Constitution. Therefore, Mr. Grigsby respectfully requests this Court suppress all evidence seized from Mr. Grigsby.

Dkt. 19 at 1.

In response, the Government offers at least some factual allegations for the court's consideration. According to it, on June 16, 2021, individuals conducted an armed robbery of an EZ Pawn store, stealing firearms. Dkt. 20 at 2. Investigation of potentially involved parties led officers to an apartment complex in Houston, Texas. *Id.* There, officers observed a group of people—including two men matching the description of the robbers—moving various bags between locations. *Id.* When the group dispersed, they left in several automobiles, one of which

was a black Infinite Q50 with temporary plates. *Id.* Unmarked officers followed that vehicle onto a public roadway. *Id.* When the vehicle changed lanes without signaling in violation of Texas Transportation Code 545.104, a marked unit pulled it over. *Id.*

Grigsby, who was known to law enforcement, was a passenger in the vehicle. *Id.* During the stop, the officers observed a Glock firearm equipped with an extended magazine in plain view partially under the driver's seat. *Id.* at 3. Officers subsequently arrested the vehicle's driver for unlawfully carrying a weapon. *Id.* Grigsby had a Louis Vuitton bag at his feet. *Id.* at 3–4. Based on their knowledge of the recent aggravated robbery, the presence of a firearm in plain view, and Grigsby's history, the Government explains that officers conducted a *Terry* wingspan search of the location around Grigsby. *Id.* at 4. At some point, officers realized that Grigsby had an open arrest warrant for a state parole violation and arrested him. *Id.* Afterward, officers searched the vehicle. *See id.* When they looked inside the Louis Vuitton bag initially found at Grigsby's feet, officers observed multiple firearms consistent with those stolen from the EZ Pawn earlier that day. *Id.* at 5. Grigsby has neither filed a reply brief nor indicated opposition to the Government's factual accounting.

## III. ANALYSIS

The court notes at the outset that "[e]videntiary hearings are not granted as a matter of course, but are held only when the defendant alleges sufficient facts which, if proven, would justify relief." *United States v. Harrelson*, 705 F.2d 733, 737 (5th Cir. 1983). Where a defendant's allegations are "sufficiently definite, specific, detailed, and nonconjectural, to enable the court to conclude that a substantial claim is presented," a hearing is required. *Id.* In the absence of such

2

sufficiently definite allegations, the court is under no obligation to hold an evidentiary hearing. *United States v. Rogers*, 481 F. App'x 157, 158–59 (5th Cir. 2012).

Grigsby has not requested an evidentiary hearing. But even if he had, his motion contains only conclusory allegations that officers obtained unspecified evidence in contravention of his constitutional rights and fails to allege any sufficiently detailed facts for the court to evaluate whether law enforcement authorities violated his rights. *See* Dkt. 19. That alone would be a sufficient basis to deny Grigsby an evidentiary hearing. *See United States v. Dean*, 100 F.3d 19, 21 (5th Cir. 1996) (affirming denial of an evidentiary hearing on a motion for return of seized funds where the defendant alleged that funds were improperly seized but provided no facts to support the claim). Moreover, because he does not refute the Government's presentation of the facts, an evidentiary hearing is unnecessary to present "evidence in support of factual allegations which…would justify the relief sought." *See Harrelson*, 705 F.2d at 738.

Turning to the merits of the search, warrantless searches are presumptively unreasonable, with some exceptions. *United States v. McKinney*, 980 F.3d 485, 490 (5th Cir. 2020). One such exception applies to traffic stops, during which "officers may briefly detain individuals…even though there is no probable cause to arrest them, if they have a reasonable suspicion that criminal activity is afoot." *United States v. Michelletti*, 13 F.3d 838, 840 (5th Cir. 1994). Two overlapping analytical frameworks bear on this court's consideration of the traffic stop. First, a police officer may "stop a vehicle if he has probable cause to believe a traffic violation has occurred." *United States v. Cole*, 444 F.3d 688, 689 (5th Cir. 2006) (citing *Whren v. United States*, 517 U.S. 806, 810, 116 S. Ct. 1769 (1996)). As the Fifth Circuit has observed, "*Whren* provides law enforcement officers broad leeway to conduct searches and seizures regardless of whether their subjective intent

3

corresponds to the legal justifications for their actions." *United States v. Miller*, 146 F.3d 274, 279 (5th Cir. 1998). However, "if it is clear that what the police observed did not constitute a violation of the cited traffic law, there is no 'objective basis' for the stop, and the stop is illegal." *United States v. Escalante*, 239 F.3d 678, 680–81 (5th Cir. 2001).

The Supreme Court's decision in *Terry v. Ohio* also governs. 392 U.S. 1, 88 S. Ct. 1868 (1968). *Terry* prescribes a two-tiered reasonable suspicion inquiry asking (1) whether the officer's action was justified at its inception, and (2) whether the search or seizure was reasonably related in scope to the circumstances that justified the stop. *United States v. Grant*, 349 F.3d 192, 196 (5th Cir. 2003). To be valid, the reasonable-suspicion determination must be anchored in an officer's "particularized and objective basis" for suspected legal wrongdoing. *Id.* Furthermore, an officer may lawfully continue the detention if she has a "reasonable suspicion supported by articulable facts that a crime has been or is being committed." *United States v. Santiago*, 310 F.3d 336, 342 (5th Cir. 2002).

Thus, whether the initial traffic stop was "justified at its inception," *McKinney*, 980 F.3d at 491, can be analyzed two ways. If there was probable cause to believe that a traffic violation occurred, the stop was reasonable and automatically satisfies *Terry*'s first prong. *See Whren*, 517 U.S. at 810; *United States v. Watson*, 751 F. App'x 592, 593 (5th Cir. 2019) (analyzing a traffic violation under *Terry*). Puzzlingly, the Government does not argue that the vehicle's improper signaling justified the traffic stop.[1] *See* Dkt. 20. Nevertheless, changing lanes without signaling

---

[1] The court worries that the Government has confused this case with another. For example, the Government claims that Grigsby cited "*Brown v. Texas*, 99 S. Ct. 2637 (1979) to support the claim that vague suspicion preceding an officer's detention of a suspect is not enough to justify a stop." Dkt. 20 at 9. Grigsby's motion, which the court quoted in full, *supra* at 1, makes no such argument and cites no such case.

4

violates the Texas Transportation Code, which requires drivers to signal "to indicate an intention to turn, change lanes, or start from a parked position." Tex. Transp. Code Ann. § 545.104(a). The Fifth Circuit has held that violations of the signaling statute sufficiently justify a traffic stop. *See Watson*, 751 F. App'x at 593.

But even in the absence of a traffic violation, a traffic stop is still justified if there is reasonable suspicion of criminal activity. *Grant*, 349 F.3d at 196. The Government argues that law enforcements' activities in this case satisfy that test because officers had "specific and articulable facts"—which the Government declines to specify or articulate—"to support an investigatory stop." Dkt. 20 at 9–20. With respect to *Terry*'s first prong, the Government ostensibly refers to the officers' (1) investigation into the armed robbery that led them to the apartment complex in Houston; (2) their observation of a group of individuals moving various bags between locations, including two men matching the description of the robbers; (3) the group's dispersal into several vehicles; and (4) one of the vehicles of interest being the black Infiniti Q50 with temporary plates in which Grigsby was a passenger. *See id.* at 2. These are specific, articulable facts supporting the reasonable suspicion that the vehicle's occupants were involved in an armed robbery. Thus, as the Supreme Court's decision in *United States v. Hensley* instructs, "[a] brief stop and detention at the earliest opportunity after the suspicion arose is fully consistent with the principles of the Fourth Amendment." 469 U.S. 221, 234, 105 S. Ct. 675 (1985).

Turning to the second prong, this case echoes *Hensley* in important respects. There, police observed an armed robbery suspect, Hensley, in the driver's seat of a vehicle and a passenger, a convicted felon, they recognized. 469 U.S. at 223–24. Police observed the butt of a revolver protruding from underneath the passenger's seat. *Id.* at 224. After arresting the passenger, a search

of the car uncovered a second handgun wrapped in a jacket in the middle of the front seat and a third handgun in a bag in the back seat. *Id.* at 225. Police arrested Hensley following these discoveries. *See id.* The Supreme Court held that the officers were

> entitled to seize evidence revealed in plain view in the course of the lawful stop, to arrest Hensley's passenger when evidence discovered in plain view gave probable cause to believe the passenger had committed a crime, and subsequently to search the passenger compartment of the car because it was within the passenger's immediate control. Finally, having discovered additional weapons in Hensley's car during the course of a lawful search, the…officers had probable cause to arrest Hensley himself for possession of firearms.

*Id.* at 235–36 (citations omitted).

This case is the mirror image of *Hensley*. Officers observed the Glock with the extended magazine in plain view partially under the driver's seat. Dkt. 20 at 3. They subsequently arrested the driver for unlawfully carrying of a weapon.[2] At that point, the officers could lawfully search the vehicle. *See Hensley*, 469 U.S. at 235–36. When they did, either in a "*Terry* wingspan search, search incident to arrest, [or] as part of a routine inventory" check, the officers observed several firearms in the Louis Vuitton bag that sat at Grigsby's feet. Dkt. 20 at 4–5. Accordingly, because the initial stopping of the car, the brief detention that followed, and the subsequent search were all justified, Grigsby's motion to suppress evidence is DENIED.

---

[2] The Government failed to cite the provision under which the driver was arrested, but the court assumes he was arrested pursuant to Tex. Penal Code Ann. § 46.02. Grigsby, who did not file a reply brief in support of his motion to suppress, does not contest that the vehicle's driver was lawfully arrested.

## IV. Conclusion

For the reasons given above, Grigsby's motion to suppress evidence (Dkt. 19) is DENIED.

Signed at Houston, Texas on February 25, 2022.

_____
Gray H. Miller
Senior United States District Judge